[Civ. No. 357.   Third Appellate District.—September 4, 1907.]

In the Matter of the Estate of ADAM WARNER, Deceased. KATIE WARNER, Appellant, v. ADAM J. WARNER, Respondent.

ESTATES OF DECEASED PERSONS—RELINQUISHMENT OF RIGHTS OF WIFE AS HEIR OF HUSBAND—ANTENUPTIAL CONTRACT—CONSTRUCTION.— Whatever interest the wife acquires in the community property, or the husband's separate property, she acquires as heir; and an antenuptial agreement, under which the proposed husband agrees to support the proposed wife and her daughter, to pay her $100 per year, and $1,000 at his death, in consideration of which she relinquishes and disclaims any right or interest in or to his property as heir or otherwise, cannot be construed as applying only to the property then possessed, but relinquishes all claim as heir to any part of the community property or separate property of the husband thereafter acquired, neither of which could vest in her as heir until his death.

ID.—TERMS OF CONTRACT PRECLUDE ADMINISTRATION BY WIFE.—If the antenuptial agreement is to have legal effect, the wife, under its terms, is not entitled to letters of administration upon the estate of the deceased husband.

ID.—PROVISION IN CONTRACT FOR THOUSAND DOLLARS PAYMENT FROM ESTATE.—The payment of the $1,000 agreed upon in the ante-

nuptial contract, if the wife receives it at all, will be not because the law of descent casts it upon her, but under the terms of the contract.

ID.—CONTEST FOR LETTERS—OPPOSITION OF WIFE TO PETITION OF SON—ANSWER—FRAUD—MISTAKE—NONPERFORMANCE OF CONTRACT—JURISDICTION.—Where there was a contest for letters of administration between the wife and son of the deceased husband, and in opposition to his petition she interposed an answer, alleging facts constituting fraud in the antenuptial contract, and also constituting mutual mistake therein, that the agreement was waived by the husband in his lifetime, that he failed and refused to support her minor daughter, and failed to make any provision for payment of the $1,000, a general demurrer thereto was improperly sustained and the answer was improperly stricken out, on the ground that the court had no jurisdiction to inquire into these matters, upon a contest for letters.

ID.—NONPERFORMANCE OF MATERIAL COVENANTS—RIGHTS OF HEIRSHIP.—Where a woman, in an antenuptial contract, has released all rights in the property of her intended husband as his heir, in consideration of his agreed action, if he fails to perform material covenants on his part, she may show this and still claim her rights as his heir.

ID.—POWER AND DUTY OF SUPERIOR COURT—DETERMINATION OF ISSUES. The superior court, in the exercise of its general powers, though sitting in probate, had jurisdiction to hear and determine the issues raised by the answer of the wife to the petition of the son for letters. It was the duty of the superior court to ascertain which of the two parties petitioning was entitled to letters of administration; and as such it had power and it was its duty to decide and pass upon all questions necessary to be decided to reach a proper conclusion upon the ultimate issue to be determined.

ID.—RES ADJUDICATA AS TO HEIRSHIP.—The fact that the final determination of heirship upon the application for letters will probably conclude the widow upon distribution of the estate affords a good reason why all issues raised as to the validity of the antenuptial contract, and as to the widow's right of heirship, should be fairly and fully determined upon the contest for letters.

APPEAL from a judgment of the Superior Court of Sacramento County, upon a contest for letters of administration. J. H. Hughes, Judge.

The facts are stated in the opinion of the court.

Hiram W. Johnson, and A. A. De Ligne, for Appellant.

A. L. Shinn, and W. F. Renfro, for Respondent.

ELLISON, J.—One Adam Warner died intestate in Sacramento county in January, 1906, and soon thereafter the appellant, his widow, filed a petition in the superior court of that county, asking that she be appointed administratrix of his estate. The respondent, a son of the deceased, filed a petition asking that he be appointed administrator of said estate, and also filed a contest to the petition of the widow.

The respondent concedes that the appellant is the widow of the deceased, and would ordinarily be entitled to administer upon his estate, but by his pleadings makes the claim that by virtue of the provisions of a certain written agreement she is not entitled to succeed to any part of the personal estate of the deceased, and therefore is not entitled to letters of administration. (Code Civ. Proc., sec. 1365.)

It appears from the record that just prior to the marriage of the appellant and deceased they entered into a written agreement with each other, the material parts of which are as follows: Adam Warner, in consideration of the marriage thereafter to be performed, agreed to support appellant and her minor daughter and to pay to the appellant the sum of $100 per year, and agreed that at his death she should receive out of his estate, without administration, the sum of $1,000. In consideration of the marriage to be performed and of the covenants and agreements to be kept and performed on the part of the said Adam Warner, and in further consideration of the said Adam Warner paying to appellant the said sum of $100 per annum and of her receiving from his estate at his death the sum of $1,000, she "does hereby relinquish and disclaim any and —— right, claim or interest in or to the property of the said first party (Adam Warner) either as heir or otherwise."

By this agreement, the appellant relinquished all claim in and to the property owned by Adam Warner at the time of the marriage and also all interest in any property he might have at the time of his death, and if still enforceable, prevents her from succeeding as heir to any of the personal property of the deceased.

The language of the instrument is not consistent with the theory that they were contracting in respect only to the property then owned by the deceased. The words "relinquish

all claim in and to the property of Adam Warner, as heir or otherwise," cannot be thus limited.

"It must first be observed, that by the law no inheritance can vest, nor can any person be the actual or complete heir of another till the ancestor is previously dead. *Nemo est haeres viventis.*" (Blackstone, vol. 2, p. 208.)

When appellant relinquished all claim to the property of the deceased as his heir, she was not merely relinquishing her claim in and to property then owned by him. She had in mind that deceased might die before she did without having made a will, at which time, and not before, she would occupy the position of being his heir, and she contracted that when that event happened and that time came she would claim nothing from his estate by inheritance.

It is unnecessary to enter into any lengthy discussion of the meaning and effect of this agreement, because the supreme court had it under consideration in the case of *Warner* v. *Warner*, 144 Cal. 618, [78 Pac. 24], and in reference to it said: "The relinquishment and disclaimer of the defendant of all right and interest in and to the property of the plaintiff 'either as heir or otherwise' was an agreement on her part not to seek to deprive him of any of his property during his lifetime or to assert any claim thereto adverse to him during his lifetime or any claim of inheritance thereto at his death."

The suggestion of counsel that, notwithstanding the agreement, the appellant succeeds to one-half of the community property and to one-third of the acquisitions of the deceased as his separate property cannot be accepted.

Whatever interest the wife acquires in the community property or the husband's separate property she acquires as heir (*Cunha* v. *Hughes*, 122 Cal. 111, [68 Am. St. Rep. 27, 54 Pac. 535]; *Estate of Burdick*, 112 Cal. 387, [44 Pac. 734]), and when she relinquished her rights as heir she relinquished her right to a part of the community property and to the subsequent acquisition to the separate property.

As to the $1,000, if she gets it at all, it will not be because the law of descent casts it upon her, but under the terms of the contract.

Thus construing the written agreement of the parties, it is clear that if it is to have legal effect and to be held binding according to its terms, appellant is not entitled to letters of administration. (*In re Davis*, 106 Cal. 455, [39 Pac. 756].)

But appellant, by an answer to the opposition, alleged matters which she claimed would result in a finding that the agreement was not legally binding upon her, at least in its present form.  In this answer she alleged: That the agreement was entered into as the result of fraud, stating in what the fraud consisted; that the agreement was entered into as the result of a mutual mistake, as to the terms and conditions incorporated into it, stating in what the mistake consisted; that the consideration of the agreement was inadequate and disproportionate to the value of the property of the husband; that the agreement was waived by the said Adam Warner in his lifetime; that said Adam Warner failed and refused to support the minor daughter of appellant during his lifetime and failed to make any provision for the payment of the $1,000.

A demurrer both general and special was interposed to this answer and by the court sustained, and the answer was stricken out.  The special demurrer was on the ground that the court, sitting in probate, could not inquire into these matters of fraud, mistake and so forth, alleged in the answer.

The order sustaining the demurrer was general and does not state on what particular grounds it was based, and if correct upon any ground or for any reason should be sustained.

It is stated in the brief of appellant, and not denied by respondent, that the demurrer was sustained upon the ground that the court sitting in probate had not jurisdiction to try these issues raised by the answer; and not much, if any, question is raised as to the technical sufficiency of the answer as a pleading.

We are of opinion that the answer was good as against a general demurrer.

The allegation that the deceased did not perform the terms and conditions of the contract on his part to be performed and did not educate the daughter of the appellant, we think raised a material issue.  It seems the respondent was of the same opinion, for, in his petition and opposition, he alleged such performance on the part of the deceased, and the court has found such performance.  So it would seem that the matter was deemed material by both the respondent and the lower court.  We think that where a woman in an antenuptial contract releases all her rights in the property of her intended

husband as his heir, in consideration of his doing certain things, if he fails to perform material covenants on his part she may show this and still claim her rights as heir. (*Mann* v. *Mann*, 53 Vt. 55; Schouler on Domestic Relations, p. 271.)

As to the fraud and mistake alleged: It may be that a careful analysis of the pleading in these particulars would lead to the conclusion that it is defective in some particulars required in a pleading purporting to set up fraud and mistake, but if so, the defect could not be reached by a general demurrer where other defenses are sufficiently alleged in the pleading. The matter would have to be reached in some other way, where, after full investigation, the pleader could, if he so desired, ask to amend, to correct the defects and omissions, if such there be.

Did the court, sitting in probate, have jurisdiction to hear and determine these defenses raised by the answer? It was the duty of the superior court to ascertain and determine which of the two parties petitioning was entitled to letters of administration, and as such it had power and it was its duty to decide and pass upon all questions necessary to be decided in order to reach a proper conclusion upon the ultimate issue to be determined.

An inspection of the written agreement when presented showed that she was not entitled to administer on the estate. She had anticipated this by alleging in an appropriate pleading facts which, if true, would show that the agreement ought not to be held binding upon her.

Before it could be determined whether she was entitled to administer, it was necessary for the court to determine the validity of the agreement, an issue as to its validity and binding force, having been raised. The matter was being heard in the superior court, the jurisdiction of which is fixed by the constitution and not by acts of the legislature, and if the answer contained allegations of facts which, if true, showed that the agreement was procured by fraud or mistake or had not been executed by the parties, it was the duty of the court and it had the power to pass upon these issues. This view seems to be in harmony with the law as stated in *Re Burton,* 93 Cal. 463, [29 Pac. 36], wherein it is said: "No distinct court of probate has been created or recognized by the present constitution of this state. The constitution has created superior courts and has given them original juris-

diction of the subject matter of various classes of actions and special proceedings more or less distinct from each other, among which are 'all actions at law which involve the title or possession of real property' and 'all such special cases and proceedings as are not otherwise provided for' and 'all matters of probate.' . . . The superior court, while sitting in matters of probate, is the same as it is while sitting in equity, in cases at law, or in a special proceeding; and when it has jurisdiction of the subject matter of a case falling within either of these classes, it has power to hear and determine, in the mode provided by law, all questions of law and fact, the determination of which is ancillary to a proper judgment in such case. This is an incidental power pertaining 'to all courts for the purpose of enabling them to exercise the jurisdiction which is conferred upon them.' "

Nor is there anything in the case of *Corker* v. *Corker*, 87 Cal. 650, [25 Pac. 922], in conflict with these views when the facts of that case are clearly understood. In that case a petition had been filed for the probate of a will. The wife of the deceased objected to its probate on the ground that after its execution the deceased had married her and that this marriage revoked the will, as no provision had been made for her, either by the will or by a marriage settlement.

In response to this claim of the widow, the petitioner produced a paper which he termed a marriage settlement, and claimed that it did make provision for her.

The supreme court held that a proper construction of this agreement led to the conclusion that on its face and by its terms it did not make provision for the wife, and hence that by the marriage the will was revoked.

But the superior court had gone further and had found that the agreement was not fair and reasonable; that it was not founded upon a sufficient consideration, etc. It was in reference to these findings that the court used the language quoted in respondent's brief. At page 651 of 87 Cal., [p. 924 of 25 Pac.], of the decision, the court uses this language: "As soon as this instrument was presented to the court and the court saw from an inspection of it that it was not a marriage contract, its power under the proceedings before it was limited to denying the probate of the will. After it had been shown that there was no marriage contract in which provision had been made for the wife, the court was only re-

quired to determine the person who had a right to administer the estate. Whether rights of property passed under the contract or whether it could be enforced or whether the widow had any rights in the estate of her deceased husband, are questions that may arise when distribution of the estate shall be sought, but could not then be investigated.''

All the court intended to decide in this case was that as the agreement, even if valid, did not make provision for the wife, it was of no value for the purpose for which it was offered, viz., to show that the will had not been revoked, and it was not proper for the court to decide in that proceeding whether it might not be valid and enforceable for some other purpose. The court did not intimate that when its validity became material in some matter pending in the probate court, its validity might not there be inquired into. It distinctly states that the question whether it could be enforced is a question that may arise when distribution of the estate shall be sought, and, of course, if raised, will be decided by the court in the matter of that estate—that is, by the court sitting in probate.

Notwithstanding the court had sustained a demurrer to the answer and struck it out, it found that the appellant is not entitled to succeed to any portion of the estate of the deceased; that she entered into the agreement referred to and that it was fully performed by the deceased.

While it is not necessary to decide the question at this time, yet it may be suggested that it is more than probable that these findings and the judgment following them, if permitted to stand, will be binding and conclusive upon the widow when the estate is distributed, and that she will not then nor in any subsequent proceeding be allowed to allege or prove any of the facts set forth in her answer to the opposition of the defendant. (*Howell* v. *Budd,* 91 Cal. 342, [27 Pac. 747].) If this be so, the necessity of her being allowed to allege and prove in this proceeding facts to show that the agreement is not binding upon her becomes the more apparent.

The judgment is reversed and the cause remanded, with directions to the lower court to overrule the demurrer to the answer filed by appellant to the contest of Adam J. Warner, and to deny the motion to strike out the same.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 31, 1907.